STATE OF NEW JERSEY, PLAINTIFF, v. WILLIAM J. McGOVERN ET AL., DEFENDANTS.

Argued January 15, 1946—Decided October 1, 1946.

Before Justices DONGES, HEHER and COLIE.

For the defendant McGovern, *George P. Moser.*

For the State of New Jersey, *Walter D. Van Riper,* Attorney-General, and *Mark Townsend,* Deputy Attorney-General.

For Mary Angela Doherty, *John Warren.*

The opinion of the court was delivered by

COLIE, J.   This case comes before the court on the motion of William J. McGovern to adjudge Mary Angela Doherty in contempt of court for failure to comply with the direction of a Supreme Court Commissioner to answer certain questions put to her in the course of a hearing then being conducted before him, and in the alternative for a rule requiring and directing said Mary Angela Doherty to appear before the Supreme Court Commissioner and give answers to certain questions which will be discussed later in this memorandum.

A review of the ·prior proceedings in this cause is essential to the understanding of the legal points to be hereinafter discussed and we now proceed to that review.

William J. McGovern, the sheriff of Hudson County, was indicted for failure to comply with *R. S.* 53:1–15 requiring the fingerprinting and photographing of persons arrested for an indictable offense.   The indictments were returned by the December term, 1944, grand jury of Hudson County. Immediately thereafter, McGovern applied to the Court of Chancery for an injunction to restrain the Attorney-General and acting prosecutor of Hudson County from fingerprinting and photographing him.   *McGovern* v. *Van Riper,* 137 *N. J. Eq.* 24; *affirmed,* 137 *Id.* 548.   Thereafter, McGovern applied to the Supreme Court and it allowed a writ of *certiorari* for the purpose of moving to quash and dismiss the indictments against him.   The motion to quash set forth the grounds in twenty-seven numbered paragraphs.   Ground 18, which states the sole ground presently germane, reads:

"18. That the Jury Commissioners in and for the County of Hudson, Mary Angela Doherty and Ulysses S. Mowle who prepared the Grand Jury list for the December 1944 Term deliberately and knowingly and intentionally omitted from the Grand Jury list any and all persons affiliated with the regular Democratic Organization of Hudson County with the avowed purpose and intention of effecting a selection from such list of a Grand Jury in and for the County of Hudson for the December Term A. D. 1944 which would have within it persons whose political affiliations were only with the regu-

lar Republican Organization or the organization of so called 'Edison Democrats' in Hudson County."

Leave to take depositions to be used on the return to the writ of *certiorari* was applied for and the Supreme Court, on December 6th, 1945, granted the application. After the entry of the order of December 6th, 1945, the taking of depositions proceeded and Mary Angela Doherty was called as a witness on behalf of the prosecutor of the writ, McGovern. In the course of her examination she was asked a number of questions but refused to answer each and every one of them, although directed so to do by the Supreme Court Commissioner. The following is typical of the questions which the witness refused to answer:

"*Q.* Let us start over afresh. Did you consult anyone for the purpose of obtaining names of persons whom you might or might not place upon the list? *A.* Yes.

"*Q.* Whom did you consult?

"Mr. Townsend: I object——

"The Commissioner: Objection overruled.

"Mr. Townsend: I object to that for the reasons heretofore stated. Exception.

"*A.* You want the people to whom I spoke? I am sorry, I will not give you that. Every name that I got from anyone in this county was obtained in complete confidence.

"The Commissioner: You will have to answer the question, Mrs. Doherty.

"The witness: I am sorry, Mr. Johnson, but I will not divulge a confidence.

"*Q.* Mrs. Doherty, I ask you now again to divulge the sources from which you obtained the names that you placed upon 'D5'. *A.* I have no intention of divulging the sources.

"Mr. Brigadier: I ask the Commissioner once again, for the record, in view of the testimony, to direct the witness to answer the question.

"The Commissioner: I do direct the witness to answer, as being within the scope of the issues.

"The witness: I am sorry, Mr. Commissioner, I will not answer the question."

The motion to hold Mrs. Doherty in contempt of court is opposed on several grounds, one of which is that "the order attempting to empower the Supreme Court Commissioner to rule on evidence * * * is invalid." We pass this point since the record brings up the question of the materiality and relevancy of the line of questioning pursued and we proceed to a consideration of the main question.

A reading of the questions which we have quoted *verbatim* from the record shows that their purpose was to elicit information as to the sources from which Mrs. Doherty obtained the names that she placed upon the jury list and the same purpose was behind each of the questions which she refused to answer.

It is contended on behalf of Mrs. Doherty and on behalf of the State of New Jersey that these questions are irrelevant and immaterial and in order to determine whether they are relevant and material we must refer back to the eighteenth ground upon which the defendant McGovern seeks to quash the indictment. In order to sustain the charge against the jury commissioners embodied within reason No. 18 it is incumbent upon Mr. McGovern to produce evidence that Mrs. Doherty "deliberately, knowingly and intentionally omitted all persons affiliated with the Democratic organization." It would therefore seem that the test is whether or not she so excluded members of the regular Democratic party. We are of the opinion that it is immaterial from whom Mrs. Doherty obtained the names of the persons whom she put upon the panel from which the grand jury was to be drawn. If it is a fact as contended by Mr. McGovern that the particular grand jury that returned the indictments against him was composed entirely of persons whose political affiliations were only with the regular Republican organization or the organization of Edison Democrats, it would seem that the proper way to prove that is to call the persons who were placed on the panel and ascertain from them with what political party they were affiliated. That is the course which will bring to the attention of the court most effectively and directly the truth or falsity of the allegations against the jury commissioners.

There is an additional reason why in our judgment these questions are improper. *R. S.* 2:85-1 establishes the qualifications requisite of a grand juror, and the jury commissioners may not place any one upon the panel who lacks any one or more of the qualifications set up by the legislature. They are also bound by the statute, *R. S.* 2:88-1, to "make two lists, alphabetically arranged, of persons liable to jury duty, having regard to the just distribution of jury service among those persons qualified therefor in the various wards and municipalities * * *." There is a considerable measure of discretion required of the jury commissioners if they are to follow the statutory mandate in selecting the jury panel with "due regard to the just distribution of jury service among those qualified therefor." In determining which prospective jurymen meet the qualifications and in choosing the grand jury panel from among those who have passed the statutory qualifications, each of the commissioners exercises a *quasi*-judicial function. That status has been recognized in the case of *In the Matter of the Jury Commissioner of Passaic County*, 6 *N. J. Mis. R.* 611; also compare *In re Freeholders of Hudson County*, 105 *N. J. L.* 57 (at *p.* 62), where Mr. Justice Kalisch, speaking for the Supreme Court said: "There can be no reasonably debatable question relative to the character of the functions confered upon the superintendent of elections. The functions are *quasi*-judicial. The superintendent is required first to investigate whether the person registered is properly upon the list of prospective voters, and after he has investigated, he is required to determine upon the information or proof before him whether or not the registered individual is a duly qualified voter in the district of the registry." Mr. Justice Katzenbach in a dissenting opinion said (at *p.* 69) : "It is conceded by the majority of this court that the superintendent of elections in making the investigations required by the statute and the order acts judicially. It could not be otherwise, because he is required before making the order to pass upon questions of fact and law, such as whether a person who has been duly registered is twenty-one years of age, whether he has lived in the state for one year and in the county five months, is a citizen, born

or naturalized, has been convicted of crime, an idiot, insane person, or pauper, &c. The ascertainment of these questions are judicial or *quasi*-judicial acts."

Jury commissioners in the performance of their duties are *quasi*-judicial officers and the motives and reasons that they may have for accepting some legally qualified persons for juror service and rejecting others is not open to inquiry.

For the stated reasons, the motion to adjudge Mrs. Doherty in contempt of court or to require and direct her to answer the specific questions which she refused to answer before the commissioner is denied, with costs